UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00164-GNS-LLK

NETTIE M. TODD                                                                    PLAINTIFF

v.

U.S. DEPARTMENT OF LABOR                                              DEFENDANT

## MEMORANDUM OPINION & ORDER

Plaintiff brings this action for review of the Department of Labor decisions denying her claims for compensation under the Energy Employees Occupational Illness Compensation Program Act of 2000 ("EEOICPA" or "Act"), 42 U.S.C. §§ 7384 to 7385s-16.  Because the only decision for which review is available is not arbitrary or capricious, Plaintiff's claim is **DENIED.**  As such, Defendant's Motion for District Court Review of Magistrate's Ruling (DN 39) and Plaintiff's Motion to Strike (DN 41) are **DENIED AS MOOT**.

## I.      STATEMENT OF FACTS AND CLAIMS

This matter comes before the Court regarding the challenge of Plaintiff Nettie M. Todd ("Todd") to the denial of benefits to her under the EEOICPA. (Compl. ¶ 3, DN 1).  The Department of Labor ("Department") administers the compensation program that the statute creates.  Todd's husband purportedly worked from January 1, 1952 to June 30, 1952, at the Paducah Gaseous Diffusion Plant ("PGDP").  (Pl.'s Br. Ex. 3, at 3, DN 25-2).  According to Plaintiff's complaint, Todd's husband was exposed to hazardous substances, specifically beryllium, that ultimately resulted in chronic beryllium disease ("CBD").  (Compl. ¶ 5).  Todd claims she is entitled to compensation and benefits under EEOICPA Part B.  (Compl. ¶ 15).

After denying her initial claim, the Department denied her request to re-open the decision on June 17, 2014.  (Compl. ¶ 17).

## II.    JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1331 as a federal question under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706, is presented.

## III.    STANDARD OF REVIEW

Where no statutory provisions provide otherwise, administrative decisions are reviewed under the APA. 5 U.S.C. § 704.  Courts reviewing administrative action under the APA may only set aside decisions that are "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law . . . . ."  5 U.S.C. § 706(2)(A).  "Under this APA standard, the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'"  *Ky. Waterways All. v. Johnson*, 540 F.3d 466, 473 (6th Cir. 2008) (quoting *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)).  "The arbitrary and capricious standard is the most deferential standard of judicial review of agency action, upholding those outcomes supported by a reasoned explanation, based upon the evidence in the record as a whole."  *Mich. Bell Tel. Co. v. MCIMetro Access Transmission Servs., Inc.*, 323 F.3d 348, 354 (6th Cir. 2003) (citation omitted).  Those contesting an agency's decision must "show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations."  *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 475 (6th Cir. 2004) (citation omitted) (internal quotation marks omitted).  "If there is any evidence to support the agency's decision, the decision is not arbitrary or capricious."  *Whaley v. U.S. Dep't of Labor*, No. 3:07-CV-212, 2008 WL 2446680, at *3 (E.D. Tenn. June 17, 2008) (quoting *Coal. for Gov't Procurement*, 365 F.3d at 475).  "When it is possible to offer a reasoned explanation, based on the evidence, for a particular

2

outcome, that outcome is not arbitrary or capricious." *Perry v. United Food & Commercial Workers Dist. Unions 405 & 442*, 64 F.3d 238, 242 (6th Cir. 1995) (citation omitted) (internal quotation marks omitted).

## IV.   DISCUSSION

Todd seeks review both of the denial of her Part B claim and the denial of the request to reopen that claim.  (Pl.'s Br., DN 25).  Because this Court lacks jurisdiction to review the denial of the request to reopen, this ruling is limited to the final decision.  Nonetheless, because denial of the request to reopen illustrates the fallacy of Todd's arguments, it is briefly addressed below. In short, compensation was denied not because of a failure to link the decedent's CBD to his exposure at PGDP, but for failure to establish his diagnosis with CBD in the first place.

### A.   Requests to Reopen Are Unreviewable

In accordance with the Court's earlier decisions in *Lanier v. U.S. Department of Labor*, No. 5:14-CV-228-GNS-LLK, 2015 WL 3607650 (W.D. Ky. June 8, 2015), and *Berry v. U.S. Department of Labor*, No. 5:14-CV-168-GNS, 2015 WL 1638495 (W.D. Ky. Apr. 13, 2015), requests to reopen the EEOICPA Part B claims are not subject to judicial review.  *See Berry*, 2015 WL 3607650, at *2-4; *Lanier*, 2015 WL 1638495, at *3-4 (citing *Cottrell v. Sullivan*, 987 F.2d 342 (6th Cir. 1992)).  Todd cites the recent U.S. Supreme Court case in *Perez v. Mortgage Bankers Association*, 135 S. Ct. 1199 (2015), for the proposition that her request to reopen is reviewable.  (Pl.'s Reply Br. 3, DN 27).  *Perez* does not support Todd's position.  The *Perez* Court held that a D.C. Circuit judicial doctrine which forced agencies to reinterpret rules through formal notice-and-comment process was invalid under the APA, 5 U.S.C. §§ 500-596.  *Perez*, 135 S. Ct. 1199, 1207-10.  This ruling makes it easier for agencies to change their interpretive rules which works against Todd's position.  Todd's reliance upon the basics of administrative

law recited in that opinion does not change the outcome in this instance.  Todd also cites *Kucana v. Holder*, 558 U.S. 233 (2010), relating the statutory right to reopen with the regulatory right to reopen at issue here.  (Pl.'s Reply Br. 8).  Todd largely ignores the significant differences between a statutory right to reopen and the regulatory one at issue in the present case.  *Kucana* indicates that a statutory right administered by an agency is subject to judicial review, absent explicit preclusion.  Without this statutory right, judicial review is unavailable.

This Court reads the *Kucana* decision in its specific statutory and historical context.  *Kucana* noted the lengthy history of federal court review of denials of requests to reopen immigration proceedings ("back to at least 1916"), including its own opinions.  *Id.* at 242.  The historical, contextual, and statutory factors that guided the Court in *Kucana* are not present in the EEOICPA claims.  Further, *Kucana*'s analysis focused on the specific statutory language proscribing judicial review of certain other agency decisions under the statute.  *Id.* at 243-53.  Absent a statute providing  plaintiffs procedural rights or limiting judicial review in the case at bar, *Kucana* offers little guidance.  This conclusion parallels the Sixth Circuit's holding in *Your Home Visiting Nurse Services, Inc. v. Secretary of Health & Human Services*, 132 F.3d 1135 (6th Cir. 1997), that no presumption of judicial review is warranted when an agency has created adjudicatory procedures beyond that required in the governing statute.  *Id.* at 1140.  In *Your Home Visiting Nurse Services, Inc.*, the court deferred to the agency's interpretation of jurisdiction in finding that none existed.  *Id.* at 1139.  That same conclusion, even absent heightened deference, applies with equal force in this case.

### B. Part E Claims

Under the EEOICPA, final decisions of DOL are reviewable under Part E as follows:

A person adversely affected by a final decision of the Secretary under [Part E] may review that order in the United States district court . . . . by filing in such

4

court within 60 days after the date on which that final decision was issued a written petition praying that such decision be modified or set aside . . . . Upon such filing, the court shall have jurisdiction over the proceeding and shall have the power to affirm, modify, or set aside, in whole or in part, such decision.

42 U.S.C. § 7385s-6(a).

This Court has previously ruled that compliance with the 60-day filing deadline under Section 7385s-6(a) is a jurisdictional prerequisite for judicial review of the DOL's final decisions denying claims under Part E. *See Lanier*, 2015 WL 1638495, at *2-3. Here, the Department's July 15, 2011 decision denied Todd's Part B claim for her husband's alleged CBD and her Part E claim for his death allegedly due to CBD, which ruling became final on September 14, 2011. (Administrative R. 240-248, 196 [hereinafter AR]). Under 42 U.S.C. § 7385s-6(a), this Court's jurisdiction to review that denial expired 60 days after September 14, 2011. Todd's request for review was filed with this Court almost three years later on August 20, 2014, well beyond 60 days after the decision became final. Thus, the Court lacks jurisdiction to review the decision denying her Part E claim.

**C.    Arbitrary and Capricious Review**

Part B of the EEOICPA does not contain any specific provision either allowing for or precluding judicial review. This Court has federal question jurisdiction to review DOL's final decisions to deny claims for benefits under Part B of the EEOICPA pursuant to 28 U.S.C. § 1331. *Califano v. Sanders*, 430 U.S. 99, 105 (1977). Since the EEOICPA is silent on the procedures to be employed in adjudicating claims for compensation under the Act, courts have employed the APA's "arbitrary or capricious" standard when reviewing the DOL's final decisions denying claims for compensation under Part B of the EEOICPA. *See Yatsko v. U.S. Dep't of Labor*, 439 F. App'x 122, 124 (3d Cir. 2011); *Hayward v. U.S. Dep't of Labor*, 536 F.3d 376, 379-80 (5th Cir. 2008) (per curiam). Under the APA's "arbitrary or capricious"

5

standard, a reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Johnson*, 540 F.3d at 473 (citation omitted).

Todd argues "[t]he Record clearly establishes that [the decedent] had Chronic Beryllium Disease . . . ." (Pl.'s Br. 7). Even if this were true, this is not the standard to evaluate the Department's actions. Todd must "show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations." *Coal. for Gov't Procurement*, 365 F.3d at 475. Todd has made no such showing.

The EEOICPA establishes a statutory diagnostic standard for CBD:

> For diagnoses before January 1, 1993, the presence of—
> **(i)** occupational or environmental history, or epidemiologic evidence of beryllium exposure; and
> **(ii)** any three of the following criteria:
> > **(I)** Characteristic chest radiographic (or computed tomography (CT)) abnormalities.
> > **(II)** Restrictive or obstructive lung physiology testing or diffusing lung capacity defect.
> > **(III)** Lung pathology consistent with chronic beryllium disease.
> > **(IV)** Clinical course consistent with a chronic respiratory disorder.
> > **(V)** Immunologic tests showing beryllium sensitivity (skin patch test or beryllium blood test preferred).

42 U.S.C. § 7384l(13)(B). Generally, when the documentation purporting to establish CBD is dated before 1993, the pre-1993 statutory definition may be used. *See* Federal (EEOICPA) Procedure Manual, ch. 2-1000.6 ("depends on the totality of the medical evidence").[1] The EEOICPA Procedure manual provides a list on documentation which the DOL may base a finding of a clinical course consistent with CBD. Here, Todd's husband worked at PGDP and was diagnosed with lung defects prior to 1993. (AR 454). Therefore, the DOL properly applied the pre-1993 statutory definition using his medical documentation. The parties neither dispute

---

[1] http://www.dol.gov/owcp/energy/regs/compliance/PolicyandProcedures/proceduremanualhtml/unifiedpm/Unifiedpm_part2/Chapter2-1000EligibilityCriteria.htm (last accessed 4/11/2016).

that this is the applicable statutory definition nor that Todd's husband satisfies the occupational history requirement.  He was employed at a covered facility where beryllium was present.  (AR 95).  Therefore, the employee meets the occupational requirement of criterion (i).

The Department's final decision found two of five criteria were satisfied for a pre-1993 diagnosis. Criterion (II) was satisfied as the decedent exhibited a diffused lung capacity defect. (Def.'s Br. 10).  Criterion (IV) was met because the decedent exhibited a clinical course consistent with a chronic respiratory disorder.  (Def.'s Br. 10).  Three of the five criterion must be met, however, to diagnose pre-1993 CBD under the statute.  42 U.S.C. § 7384l(13)(B).

Todd argues Criterion (I) (characteristic chest radiographic abnormalities) is also satisfied.  She points out that the Department's procedure manual lists lung abnormalities as one of the diagnostic indicators of CBD, and that the decedent's medical records include effusion and pneumonia.  (Pl.'s Br. 10-13).  She points to other findings in the medical records that the Department's guidelines list as indicative of CBD.  Those findings, however, are not dispositive of a CBD diagnosis because the Department's guidelines provide that the diagnostic findings are merely consistent with, rather than conclusive of CBD.  Federal (EEOICPA) Procedure Manual, ch. 2-1000.6(c) ("[T]he DEEOIC staff accepts these diagnostic findings **as either being characteristic of** or denoting abnormalities **consistent with** CBD." (emphasis added)).  This qualification is not present in all indicators listed which reflects the Department's conclusion that those particular findings do not always evidence the "characteristic chest radiographic abnormalities" required to diagnose CBD by statute.

The Department had a medical consultant examine Todd's husband's x-rays and other diagnostic scans to determine whether criterion (I) was met.  Examining all available reports, the

consultant concluded the available chest radiography does not show characteristic abnormalities of CBD (AR 240-242).

This Court concludes the Department's decision was neither illogical nor in contravention of its published procedures.  The procedure manual which Plaintiff cites as contradictory to the medical consultants' results does not dictate that the results indicated always meet criterion (I).  The medical consultant's explanation for determining some findings were inconsistent with CBD was explained logically, and the Department's decision followed from the conclusions of these medical consultants.  (AR 897).  "The court is not empowered to substitute its judgment for that of the agency."  *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).  Because the Department's decision was based on a consideration of the relevant factors and there was no clear error of judgment, the decision is neither arbitrary nor capricious. *Id.*  Therefore, all arguments based on the presumption that Plaintiff was improperly denied benefits based on her husband's CBD are moot.

### D.     Special Exposure Cohort Status Is Irrelevant

Todd argues the Department erred in its decision because the decedent's employment at the PGDP qualified him as a member of the Special Exposure Cohort ("SEC").  (Pl.'s Reply Br. 6).  Among other workers, those who worked at the PGDP for at least 250 days prior to February 1, 1992, (with special exposure requirements) are included in this group.   42 U.S.C. § 7384l(14)(A).  Inclusion entitles members who contract specified cancers to compensation under EEOICPA Part B without an additional demonstration of causation.  42 U.S.C. § 7384l(9)(A).

SEC status is irrelevant to Todd's claim for two reasons.  First, SEC status is relevant only for compensation for cancer.  SEC members are "a class of employees at any Department of Energy facility who likely were exposed to radiation at that facility but for whom it is not

feasible to estimate with sufficient accuracy the radiation dose they received." 42 U.S.C. § 7384q(a)(1). Inclusion in the group exempts members from demonstrating causation of cancer from radiation through a radiation dose reconstruction.[2] Because this judicial review encompasses only Todd's claim for CBD—not her prior claim for cancer—SEC status is irrelevant to this analysis. Second, employment history and SEC status are irrelevant because the statutory definition of CBD assumes causation once the disease has been diagnosed and the covered employee worked "for at least one day" at a covered facility. *See* 42 U.S.C. § 7384l(13)(B)(i); Federal (EEOICPA) Procedure Manual ch. 2-1000.4. If Todd's husband had been found to have CBD, his work at the PGDP would have been assumed to be the cause. His claim was denied not due to lack of causation of the CBD, but because he was not diagnosed with CBD in the first place.

## V.    **CONCLUSION**

Todd's husband's medical records did not establish the statutory criteria for a diagnosis of CBD. The Department's decisions so concluding were logical and based on evidence in the record, so that its decision was not arbitrary and capricious. Consequently, Todd's claim was properly denied, and this case must be **DISMISSED**. As such, Defendant's Motion for District Court Review of Magistrate's Ruling (DN 39) and Plaintiff's Motion to Strike (DN 41) are **DENIED AS MOOT**.

**Greg N. Stivers, Judge**
**United States District Court**
May 13, 2016

cc:    counsel of record

---

[2] http://www.dol.gov/owcp/energy/regs/compliance/law/SEC-Employees.htm (accessed 4/12/2015).

9